**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
JUDGE CHRISTINE M. ARGUELLO**

**Criminal Action No. 18-cr-00201-CMA-GPG**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

1.  **JESSICA MONARREZ, and**
2.  **ANDY SELTZER,**

Defendants.

----------------
and
----------------

**Criminal Action No. 18-cr-00202-CMA-GPG**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

1.  **DEAN SCHMID,**
2.  **ANGELA SCHMID, and**
4.  **ANDY SELTZER,**

Defendants.

_____

**OPINION AND ORDER ADOPTING RECOMMENDATIONS AND DENYING
MOTIONS TO DISMISS AND TO SEVER**
_____

**THIS MATTER** comes before the Court pursuant to various motions filed by Mr.

Seltzer and Ms. Schmid in one or both cases, described in more detail below.

1

In 18-cr-201, the Defendants are charged in a 5-count Indictment **(# 16)** of April 24, 2018.  Count 1 charges both Defendants with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841 and 846, and Count 2 charges Mr. Seltzer with an individual instance of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).  The remaining counts are not germane to the matters presently before the Court.

In 18-cr-202, the Defendants are charged in a 10-count Indictment **(# 21)** of August 24, 2018.  Count 1 charges the Defendants with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841 and 846.  Count 6 charges Ms. Schmid with an individual instance of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).  The remaining charges are not germane to the matters presently before the Court.

**A. Mr. Seltzer's Motions to Reconsider Detention**, (#122/#230)[1]

Mr. Seltzer filed motions in December 2019 requesting reconsideration of his detention order.  At a hearing on December 24, 2019, the Magistrate Judge recommended (#127/#241) that Mr. Seltzer's motions be denied.  No objections to that recommendation were filed.  Mr. Seltzer subsequently filed additional motions (#155/#261) again seeking reconsideration of his detention.  Those more recent motions appear to have been denied by the Magistrate Judge on March 20, 2020 (#157/#263).

---

[1]     Because most motions addressed in this Order were filed identically in both cases, for efficiency purposes the Court will identify motions and related filings in the format of (#X/#Y). The X represents the appropriate docket number in the 18-cr-201 case and the Y represents the appropriate docket number in the 18-cr-202 case.  Deviations from this format will be expressly noted.

To the extent the December 2019 motions have not been mooted by Mr. Seltzer's subsequent filings, in the absence of timely objections, the Court reviews the Magistrate Judge's recommendation under whatever standard the Court deems appropriate.  *Summers v. State of Utah*, 927 F.2d 1165, 1168 (10th Cir. 1991).  The Court has reviewed the Magistrate Judge's December 24, 2019 recommendation for clear error and, finding none, adopts that recommendation and denies Mr. Seltzer's December 2019 motions.

**B.  Mr. Seltzer's Motions for a Personal Recognizance Bond** (#125/#239)

In December 2019, contemporaneously with his motions seeking reconsideration of his detention order, Mr. Seltzer filed motions requesting that he be released on a personal recognizance bond.  At the December 24, 2019 hearing, the Magistrate Judge recommended (#127/#241) that the motions be denied.  No objections to that recommendation were filed.  Once again, to the extent that Mr. Seltzer's requests have not been rendered moot by subsequent proceedings, the Court has reviewed the Magistrate Judge's un-objected to recommendation of December 24, 2019 for clear error and, finding none, adopts it.  Mr. Seltzer's motions for a personal recognizance bond are denied.

**C.  Mr. Seltzer's Motions to Continue Trial** (#130/#244)

On December 30, 2019, Mr. Seltzer filed motions seeking the continuance of the then-pending trial dates in April and May of 2020.  On January 27, 2020, the Magistrate Judge recommended (#140/#250) that the motions be granted and that the trials be reset to dates in September and October 2020.[2]  No objections to that recommendation

---

2       Those trial dates have since been vacated and reset again (#170/#276).

3

were filed.  To the extent Mr. Seltzer's motions have not been rendered moot by

subsequent events, the Court has reviewed the un-objected to recommendation of

January 27, 2020 for clear error and, finding none, adopts it. Mr. Seltzer's motions to

continue trial are granted on the findings made by the Magistrate Judge on January 27,

2020.

### D.  Mr. Seltzer's Motions to Dismiss for Speedy Trial Violation (#153/#259)

Mr. Seltzer moves to dismiss the charges against him, arguing that both his

statutory and constitutional speedy trial rights have been violated.

### 1.  Constitutional claim

The Sixth Amendment guarantees a defendant a right to a speedy trial.  In

assessing whether delay in commencing trial has affected a defendant's Sixth

Amendment rights, the Court considers and balances four factors: (i) the length of the

delay; (ii) the reason for the delay; (iii) the defendant's assertion of his right; and (iv)

prejudice to the defendant.  *U.S. v. Cortes-Gomez*, 926 F.3d 699, 706 (10th Cir. 2019).

### 1.  **Length of delay**

The threshold factor is the length of the delay, and the Court turns to the

remaining factors only if the length of the delay has reached a point of "presumptive

prejudice," which the 10th Circuit has set as one year.  *Id.*  Mr. Seltzer was arrested on

or about April 5, 2018 and has been detained since – a period of roughly 29 months.

Thus, because the length of his delay is presumptively prejudicial, the Court turns to the

remaining factors.

### 2.  **Reasons for delay**

Numerous factors have contributed to the delay in bringing Mr. Seltzer to trial.

Mr. Seltzer has been appointed three different counsel in these cases.  His first counsel withdrew on February 6, 2019 (#63/#118) for reasons that are not disclosed in the public record.  His second counsel withdrew at Mr. Seltzer's request on September 25, 2019 (#98/#190).  Mr. Seltzer proceeded *pro se,* assisted by standby and advisory counsel, until March 25, 2020 (#159/#265).  Thereafter, at Mr. Seltzer's request, his standby and advisory counsel assumed his representation to the present time. Changes of counsel inherently delay the progress of a case, as each new counsel requires time to come up to speed on proceedings and to refashion the case strategy to their liking.  And situations where a defendant proceeds *pro se* tend to delay proceedings even more, particularly where, as here, the *pro se* defendant engages in considerable motion practice on his own.  Finally, delay is inevitable when a defendant ceases his *pro se* status and returns to representation by counsel, as counsel again has to review the proceedings to date and sometimes file (or withdraw) motions to return the case to an appropriate state and resume preparation of a defense.  Some of these delays are attributable to Mr. Seltzer's own choices, others may not be, but in no event is the Government culpable for any delays resulting from repeated changes of defense counsel.

Mr. Seltzer has filed numerous motions, both through counsel and *pro se.*  Most significantly, Mr. Seltzer has filed or joined in at least six motions requesting that the trial dates in these cases be continued.  *See* 18-cr-201, #42 (Mr. Seltzer joining in co-defendant's request for unspecified continuance, a request that was ultimately granted (#52), delaying the scheduled trial date approximately 9 months); (#66/#124) (Mr. Seltzer requesting additional 4-month continuance); 18-cr-201, #80 (Mr. Seltzer

requesting a another 4-month continuance); 18-cr-201, #86 (Mr. Seltzer's counsel requesting unspecified continuance of trial date to accommodate schedule conflict, a request that was ultimately granted (#91) which resulted in an additional 2-month continuance); (#108/#207) (*pro se* motion by Mr. Seltzer requesting 4-5 month continuance to prepare his defense); (#130/#244) (*pro se* motion by Mr. Seltzer requesting 4-month continuance).  In addition to the extensive delays occasioned by Mr. Seltzer's motions directly seeking to continue the trial, the efficient pace of this case has been further slowed by Mr. Seltzer's filing of numerous substantive motions, both through counsel and *pro se*.  *See generally*, 18-cr-201,[3] #55 (motion to suppress); #69, #122, #155 (multiple motions seeking reconsideration or modification of detention order); #103-105 (*pro se* motions seeking discovery, Bill of Particulars, and *Brady* material); #149-152 (various counseled motions seeking discovery and a *James* hearing); #153 (the instant motion); #165 (motion to dismiss Indictment, since withdrawn).  Each of these motions acts to further delay the progress of this case towards trial.

Particularly in 18-cr-202, Mr. Seltzer is also subject to delays in the case occasioned by the actions of his co-defendants.  Like Mr. Seltzer did for a time, Ms. Schmid has decided to proceed *pro se* (#98, #104), and delays that flow from her status affect the pace of the case and are not chargeable to the Government.

The factor of the reason for delays weighs against the government in proportion to the degree to which the government caused the delay.  *U.S. v. Batie*, 433 F.3d 1287,

---

[3]    Most of these motions were filed in 18-cr-202, but for purposes of illustrating the point, it is not necessary to separately cite to the corresponding docket entries in that case.

1291 (10th Cir. 2006).  Delays that are attributed to motions filed or continuances sought

by a defendant are not attributable to the government at all.  *Id.*  The causes listed

above account for the vast majority of the delay in bringing this case to trial, yet little to

none of that delay is attributable to actions taken by the Government.

Finally, the Court would be remiss if it failed to acknowledge the delays

occasioned by the onset of the COVID-19 pandemic, beginning in approximately March

2020 and continuing, effectively, to date.  That pandemic has slowed the pace of nearly

all civil and criminal cases due to the court's inability to quickly and effectively conduct

in-person hearings and trials.  *See generally* General Orders 2020-12 and 2020-15.

Some portion of the delays that have occurred since March 2020 are the result of forces

that are external to Mr. Seltzer, the Government, and the Court, and are thus not

attributable to any party.

Based on the foregoing analysis, the Court concludes that the "reason for delay"

factor weighs heavily against Mr. Seltzer.

### 3. **Mr. Seltzer's invocation of rights**

The Court looks to "whether the defendant has actively asserted his right to a

speedy trial," examining the "frequency and force" of objections, as well as their timing.

*U.S. v. Black*, 830 F.3d 1099, 1120 (10th Cir. 2016).  Naturally, the Court also considers

the converse as well – those situations in which the defendant expressly or impliedly

consented to delays in the trial date, as well as those situations in which the defendant

affirmatively asked for delays.

As discussed previously, Mr. Seltzer affirmatively requested continuances of the

trial date on at least six occasions.  By all appearances, the first time that Mr. Seltzer

made any mention of Speedy Trial concerns is in the instant motion, filed in March 2020, nearly two full years into this case.  As in *Black*, 830 F.3d at 1120, and *U.S. v. Margheim*, 770 F.3d 1312, 1328 (10th Cir. 2014), Mr. Seltzer's first meaningful invocation of his speedy trial rights has come late in the proceedings, resulting in the conclusion that this factor tips against a dismissal.

4.  **Prejudice to Mr. Seltzer**

In cases of extreme delay – which the 10th Circuit has declared to be six years or more – the presumption of prejudice alone is sufficient to tip this factor to the defendant's favor.  But if the delay has not yet reached that point, the defendant bears the burden of making a particularized showing of prejudice that has resulted from the delay.  Importantly, the defendant's showing must tie the prejudice to delays that are <u>attributable to the government</u>; where the defendant bears responsibility for some delay, prejudice that has arisen because of the defendant's delay does not weigh in the balance.  *U.S. v. Hicks*, 779 F.3d 1163, 1168-69 (10th Cir. 2015).  Generally, a defendant has three primary interests that militate against excessive pretrial delay: (i) the need to prevent oppressive incarceration; (ii) the need to minimize anxiety and concern of the defendant; and (iii) avoiding impairment to the defense.  *U.S. v. Nixon*, 919 F.3d 1265, 1274 (10th Cir. 2019).

Mr. Seltzer has been detained since his arrest in April 2018, and if trial proceeds in early 2021 as anticipated, he will have been detained roughly 32 months.  But pre-trial detention of this length alone does not amount to substantial prejudice.  *See Black*, 830 F.3d at 1122 (giving no weight to the prejudice factor despite the defendant arguing that "he was prejudiced because he had spent well over two years of his life in a jail cell

awaiting trial").  Nor has Mr. Seltzer offered any particularized articulation of prejudice relating to "anxiety and concern."  The Court acknowledges that ongoing detention is burdensome and frustrating for Mr. Seltzer, but the Court cannot conclude that Mr. Seltzer has identified any degree of prejudice on these points that is particularly attributable to the few instances of delay that could even theoretically be identified as being attributable to the government.  As discussed previously, the Court has found that much of the delay in proceeding to trial is attributable to decisions made by Mr. Seltzer himself, or due to external circumstances for which no party bears any culpability. Thus, Mr. Seltzer's ongoing detention does not amount to prejudice sufficient to tip this factor in his favor.

Based on the Court's consideration of the four factors, the Court finds that Mr. Seltzer has not shown that his Sixth Amendment rights to a speedy trial have been violated.  Thus, his motion seeking dismissal on constitutional grounds is denied.

### 2. Statutory claim

Mr. Seltzer also asserts that he has not been brought to trial within the time frames established by the Speedy Trial Act, 18 U.S.C. § 3161.  Generally speaking, that statute requires that a defendant be brought to trial within 70 days of his initial appearance, although those time limits are subject to tolling for a wide array of reasons. 18 U.S.C. § 3161(c), (e), (h).

Mr. Seltzer's initial appearance was on April 5, 2018, but his statutory Speedy Trial clock did not begin running until the date the Indictment was unsealed, April 24,

2018.  *See* 18 U.S.C. § 3161(c) (clock begins running from initial appearance or unsealing of indictment, "whichever date last occurs").   The clock was tolled as of June 5, 2018, the date that Ms. Monarrez moved to continue the trial date, 18-cr-201, #40, a request in which Mr. Seltzer joined (#42).[4]  *See* 18 U.S.C. §3161(h)(1)(D) (pendency of pretrial motion tolls clock).  Thus, by the time of Ms. Monarrez's motion, a total of 42 days elapsed on Mr. Seltzer's Speedy Trial clock.

Resolution of the motion to continue was apparently delayed by the parties' desire to conduct more investigation before setting a new trial date (#47, #49), and the motion was ultimately granted on October 9, 2018 (#52).  A new trial date was set for April 1, 2019 and the Magistrate Judge made findings that excluded the time between "the first trial date [of July 2, 2018, see #21] and the trial set for April 1, 2019" in furtherance of the ends of justice.  *See* 18 U.S.C. § 3161(h)(7)(b).  Thus, the Speedy Trial clock remained tolled at 42 days through April 1, 2019.

In February 2019, Mr. Seltzer moved to continue the trial date (#66), and the Magistrate Judge granted that motion, continuing to trial to July 1, 2019 and making findings excluding all time between April 1, 2019 and July 1, 2019 pursuant to the ends of justice.  (#70).  Thus, the clock remained tolled through July 1, 2019.  On June 13, 2019, Mr. Seltzer again moved (#80) to continue the trial and the Magistrate Judge granted (#85) that motion, continuing the trial date to November 4, 2019 and again

---

[4]     For purposes of efficiency, this analysis will focus on the 18-cr-201 case alone and the corresponding docket numbers refer only to that case.  The operative dates in 18-cr-202 may differ, but not in ways that materially alter the analysis. *See e.g.* 18-cr-202, #58 (first motion to continue trial, filed June 13, 2018).

making findings pursuant to the ends of justice to exclude the intervening time from the Speedy Trial calculation.

Now *pro se*, Mr. Seltzer filed another motion to continue the trial date on October 11, 2019 (#108).  The Magistrate Judge recommended (#110) that that motion be granted, that the trial date be reset to April 6, 2020, and that the intervening time be excluded form the Speedy Trial calculation pursuant to the ends of justice.  The Court adopted (#120) that recommendation on November 18, 2019.  Thus, the clock remained tolled through April 6, 2020.

Mr. Seltzer moved for another continuance on December 30, 2019 (#130).  The Magistrate Judge recommended (#140) that the motion be granted, that trial be reset to September 1, 2020, and that the intervening time be excluded from the Speedy Trial calculation pursuant to the ends of justice.  The Court has adopted that recommendation in this Order as set forth above.  Thus, the Speedy Trial clock remained tolled through September 1, 2020.

Finally, on April 27, 2020, the Magistrate Judge entered an order (#170) continuing the September 1, 2020 trial date to November 2, 2020.  Although it appears to have been issued *sua sponte*, the order makes findings that such a continuance meets the ends of justice, both because the ongoing COVID-19 pandemic makes commencement of a trial by September 1, 2020 more difficult, and also because Mr. Seltzer's counsel "needs time to review the discover as he has only recently been

11

appointed as full counsel." Thus, the Speedy Trial clock remains tolled through

November 2, 2020.[5]

Accordingly, because only a total of 42 of the 70 available days have elapsed on

Mr. Seltzer's statutory Speedy Trial clock under 18 U.S.C. § 3161(c), and the clock

remains tolled at present, no violation of the statute has occurred. Thus, Mr. Seltzer's

motion to dismiss the Indictment on Speedy Trial grounds is denied.

**E. Mr. Seltzer's Motion to Sever**, 18-cr-202, #170, #249

Mr. Seltzer filed a *pro se* motion seeking severance from his co-defendants for

purposes of trial. That motion, filed in both cases (but subsequently deemed withdrawn

in 18-cr-201 due to the Notice of Disposition filed by his sole co-defendant in that case),

argues generally that there will be "prejudicial spillover" that will result if he is jointly tried

with his sole remaining co-defendant here, Ms. Schmid, because "the charges and

evidence against [Ms. Schmid is] far more substantial and incriminating than that

against him." He does not elaborate on the factual basis for that assertion.

Fed. R. Crim. P. 8(b) provides that "two or more defendants may be charged in

the same indictment or information if they are alleged to have participated in the same

act or transaction . . . constituting an offense." Here, Mr. Seltzer and Ms. Schmid are

both charged in Count 1 with participating in the same conspiracy to distribute

methamphetamine. Once defendants are properly jointly indicted, there is a

---

[5]    It appears that there remains an outstanding motion in this case, Mr. Seltzer's Motion to Suppress (#55). Although that motion was initially filed in 2018, Mr. Seltzer's newest counsel has only recently affirmed Mr. Seltzer's intention to proceed on that motion (#181) and the parties have supplemented their briefing as recently as May 29, 2020 (#173, *see also* #166). By all appearances, the motion will require an evidentiary suppression hearing to be conducted by the Magistrate Judge, and thus, the motion is not yet under advisement. Thus, it continues to toll the Speedy Trial clock pursuant to 18 U.S.C. § 3161(h)(1)(D).

presumption that they should be tried jointly as well, although Fed. R. Crim. P. 14

provides that where a defendant is "prejudiced by a joinder of . . . defendants . . . for

trial together, the court may . . . grant a severance of defendants." *Zafiro v. U.S.*, 506

U.S. 534, 538 (1993).  A severance is appropriate only where the Court finds that "there

is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants, or prevent the jury from making a reliable judgment about guilt or

innocence."  *Id.*  *Zafiro* gives several examples of the types of situations where such a

risk is present: (i) where there is evidence that would be admissible as to a co-

defendant but which would be excluded in a trial solely against the movant; (ii) where, in

a complex multi-defendant case, the defendants have "markedly different degrees of

culpability"; and (iii) where exculpatory evidence would be available to a defendant tried

alone but would be excluded in a joint trial.  *Id.* at 539.  But defendants are not entitled

to a separate trial simply because they would have a better chance of acquittal if tried

alone.  *Id.* at 540.  Nor does the general argument that there is some degree of

"spillover" that will result from evidence that is more damaging to a co-defendant than it

is to the movant.  *U.S. v. Yurek*, 925 F.3d 423, 436 (10th Cir. 2019).  To be entitled to

severance, Mr. Seltzer bears the "heavy burden of showing real prejudice to his case" if

evidence relating exclusively to Ms. Schmid is included.  *U.S. v. Morgan*, 748 F.3d

1024, 1043 (10th Cir. 2014).

Mr. Seltzer has not done so.  His motion does not even mention Ms. Schmid,

much less identify particular evidence that will be used against her that is both irrelevant

and prejudicial to the count against him.  Nor could he.  Both he and Ms. Schmid are

alleged to be members of the same conspiracy, and thus, the Government will be

13

required to prove that Mr. Seltzer and Ms. Schmid both joined in and participated in the same conspiracy and that they were dependent on each other's actions to accomplish the conspiracy's objective.  Thus, evidence of both co-defendants' activities are likely to be relevant and admissible even if tried separately.  Mr. Seltzer makes a passing comment that his culpability in the alleged conspiracy is essentially non-existent – that he "was working on [Mr.] Schmid's Mustang and was not working in connection to distribute alleged drugs," but this argument is directed at the weight of the evidence, not any clear disparity in the involvement of himself and Ms. Schmid in the alleged conspiracy.  Finally, although Ms. Schmid is also charged separately in Count 6 with an additional crime of distributing methamphetamine on another occasion distinct from the conspiracy, Mr. Seltzer has not offered any analysis of the evidence that will be presented with regard to this Count, much less shown that remedies such as limiting instructions cannot effectively ensure that the jury properly cabins the evidence that relates solely to Ms. Schmid and does not consider it with regard to the charges against him.

Accordingly, the Court finds that Mr. Seltzer has not carried his burden of showing sufficiently severe prejudice arising from a joint trial as to warrant severance. Thus, his motion for severance is denied.

**F.  Ms. Schmid's Motions to Dismiss** 18-cr-202, #164, #219

Ms. Schmid has filed two *pro se* motions seeking to dismiss the charges against her.  In the first, Docket #164, argues that the Indictment is deficient because "the United States allows some people to manufacture and distribute methamphetamine" – that is, 21 U.S.C. § 841(a) prohibits distribution of controlled substances "except as

14

authorized by this subchapter" --  and that the Indictment "does not say whether or not I was given permission to distribute methamphetamine by the United States."

The Controlled Substances Act does contemplate exceptions by which controlled substances can be legally distributed via a prescription, issued for a legitimate medical purpose by an individual medical practitioner acting in the usual course of his or her practice.[6]  21 C.F.R. §1306.04(a).  But such an exception presents an affirmative defense that the defendant is obligated to plead and prove, not an element of the offense that must be negated in the indictment.  21 U.S.C. § 885(a)(1) makes clear that the Government is not required "to negative any exemption or exception set forth in" the Controlled Substances Act, and "the burden of going forward with the evidence with respect to any such exemption or exception shall be on the person claiming its benefit." 21 U.S.C. § 885(a)(1).  Thus, because the Government is not required to plead and prove that Ms. Schmid was not authorized by the U.S. Government to legally distribute methamphetamine, the Indictment is not defective and Ms. Schmid's motion is denied.

Ms. Schmid's second motion, Docket #219, argues that the conspiracy count charged against her fails to adequately allege the necessary elements of the offense. She argues that the Indictment does not plead any specific facts demonstrating the necessary interdependence among the alleged co-conspirators and does not otherwise specify the Government's theory of interdependence.  An essential element of the crime of conspiracy is that the alleged co-conspirators were interdependent in order to achieve the object of the conspiracy.  *U.S. v. Hill*, 786 F.3d 1254, 1266 (10th Cir. 2015).

---

[6]     Ms. Schmid's reference to the government authorizing "people to manufacture and distribute methamphetamine by registering them as 'U.S. vessels'" is not supported by citations to any authority and is otherwise so vague as to be meaningless.

Interdependence arises when the co-conspirators "facilitate the endeavors of the other alleged co-conspirators or facilitate the venture as a whole," not simply where each defendant acts upon separate but similar or parallel purposes.  *U.S. v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992).  But Ms. Schmid cites to no authority, and the Court is aware of none, that requires the Government to plead specific facts regarding interdependence in the indictment.  Rather, it is well-settled that "it is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly . . .  set forth all the elements necessary to constitute the offense."  *Tillman v. Cook*, 215 F.3d 1116, 1132 (10th Cir. 2000).  Here, the Indictment tracks the language of 21 U.S.C. § 841 and 846, alleging that Ms. Schmid and others did "knowingly and intentionally conspire with each other . . ." to distribute methamphetamine.  It is not necessary for the Government to separately allege that the co-conspirators were interdependent as part of the indictment, any more than it is necessary for the Government to separately allege other essential element of a conspiracy, such as an agreement between the co-conspirators or each co-conspirator's knowledge of the object of the conspiracy. Those and other requirements are subsumed within the allegation that the various defendants "conspire[d]."  In other words, if the Government ultimately proves its assertion that Ms. Schmid "conspire[d]" with her co-defendants, it will necessarily have proven the essential elements of an agreement, knowledge of the objective, and interdependence because one cannot have engaged in a conspiracy without those elements.  *See generally Hill*, 786 F.3d at 1266. In short, the Government's allegation that Ms. Schmid "conspire[d]" is all the allegation of interdependence that is necessary in the Indictment.  Further elaboration of the

16

Government's theory underlying that contention may be found in the discovery or, if appropriate, elicited via a request for a Bill of Particulars.

Accordingly, Ms. Schmid's motion to dismiss the Indictment is denied.

## G.  Conclusion

For the foregoing reasons,

1.  The Court **ADOPTS** the Magistrate Judge's Recommendation (#127 in 18-cr-201 / #241 in 18-cr-202) and Mr. Seltzer's Motions to Reconsider Detention (#122 / #230) are **DENIED**.

2. The Court **ADOPTS** the Magistrate Judge's Recommendation (#127 / #241) and Mr. Seltzer's Motions for a Personal Recognizance Bond (#125 / #239) are **DENIED**.

3.  The Court **ADOPTS** the Magistrate Judge's Recommendation (#140 / #250), and Mr. Seltzer's Motions to Continue Trial (#130 / #244) are **GRANTED**.

4.  Mr. Seltzer's Motions to Dismiss Indictment for Speedy Trial Violations (#153 / #259) are **DENIED**.

5.  Mr. Seltzer's Motions to Sever (18-cr-202 only, #170 and #249) are **DENIED**.

6.  Ms. Schmid's Motions to Dismiss Indictment (18-cr-202 only, #164 and #219) are **DENIED**.

DATED:  September 9, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge